(C. D. 616)

J. A. KIRSCH, LTD. *v.* UNITED STATES

United States Customs Court, Third Division

(Decided April 20, 1942)

*Strauss & Hedges; Barnes, Richardson & Colburn* (*J. Bradley Colburn* of counsel) for the plaintiff.

*Paul P. Rao*, Assistant Attorney General (*James F. Donnelly* and *Joseph F. Donohue*, special attorneys), for the defendant.

Before CLINE, KEEFE, and EKWALL, Judges

CLINE, Judge: This is a suit against the United States in which the plaintiff seeks to recover a part of the duty assessed on certain Dalmatian sour cherries imported from Yugoslavia. Duty was assessed at 2 cents per pound under paragraph 737 of the Tariff Act of 1930 and the plaintiff claims that duty should have been assessed at 1 cent per pound under the same provision as amended by the trade agreement with Canada published in T. D. 49752. The provisions involved read as follows:

PAR. 737 (Tariff Act of 1930) Cherries: (1) in their natural state, 2 cents per pound; * * *

PAR. 737 (Trade agreement with Canada, T. D. 49752) Cherries: (1) In their natural state, not in air-tight or water-tight containers, 1¢ per lb.

The plaintiff introduced the testimony of three witnesses. Mr. Jacob A. Kirsch, who is connected with the importing company, testified that the shipment herein involved consisted of 200 kegs of Dalmatian sour cherries; that he bought the merchandise and inspected it at the pier when it was landed; that a large number of the kegs were in a leaking condition with the juice seeping through the seams of the kegs; that the specifications under which he purchased the cherries were that they were to be packed in kegs containing 110 pounds net and nothing was to be added to them; that he had opened some of the kegs and found some liquid inside which consisted of the natural juice from the cherries; that he had been importing such goods for almost 40 years; that on the Monday before the day of trial (which was held on Wednesday) he visited one of his customers and obtained two kegs out of this particular shipment; that he personally saw the cherries in the kegs emptied into a vat and he brought two kegs back with him. One of those kegs was received in evidence and marked exhibit 1.

The witness testified further that the keg contains stains between the staves showing that juice leaked through; that he tested it with

water and found that it was not watertight; that when he buys cherries he specifies that he wants them in new kegs and when he finds the cherry juice is seeping through the seams he knows that the kegs are leaking; that at the time of importation the color of the juice seeping through the seams was bright red but that color had faded in this exhibit; that cherry juice, because of its sugar content, thickens and does not seep through the seams as freely as water; that, based on his experience, the kegs represented by exhibit 1 are not airtight or watertight containers.

The witness testified further that the same kind of cherries are imported into this country in hermetically sealed tins containing a net quantity of about 20 pounds.

The next witness called by the plaintiff was Mr. Bernard Karp who is a warehouseman in a Government bonded warehouse. He testified that he had stored many thousands of kegs of Dalmatian sour cherries during the past 5 years; that he examines all merchandise to see if it is in bad order, leaking or torn, and he has a special place for such cherries in the cellar where they will not dirty other goods; that he has stored such goods for J. A. Kirsch, Ltd., and found a good portion of them were in a leaking condition; that the kegs he stored were of the same character as exhibit 1 and in his experience he would not consider them airtight or watertight.

The next witness for the plaintiff was Mr. Sol M. Wolff who is connected with Segal Brokerage Co., importers and domestic agents of food products. He testified that his firm represents the foremost packers of Dalmatian sour cherries in Yugoslavia and that he is familiar with such cherries; that he examines the merchandise on the pier and in practically all shipments of Dalmatian sour cherries in kegs he has noticed a seepage of the juice; that he has sold such cherries in hermetically sealed tins containing 20 pounds net and that, based on his experience, such tin containers are airtight and watertight; that, if the kegs containing such cherries were airtight or watertight, it would be impossible for the juice to seep through.

Mr. Frank W. Woldering, an inspector of customs, appeared in behalf of the defendant. He testified that it is his duty to weigh cargo on the piers; that in that work he has become acquainted with Dalmatian sour cherries imported in kegs like exhibit 1; that he weighed the shipment covered by the protest in this case and sampled it; that he made no notations concerning the condition of the merchandise and did not recall in this particular instance the condition of the shipment; that he made out a sample ticket but he is not required to report the condition of the merchandise on such ticket; that he had inspected and sampled Dalmatian cherries in kegs like exhibit 1 approximately 40 or 50 times and he had noticed leakage or seepage from such kegs.

At the close of the plaintiff's case, counsel for the defendant moved to dismiss the protest on the following grounds:

Plaintiff is claiming under the benefits of the Canadian Trade Agreement, T. D. 49752, and according to the Tariff Commission report concerning the intentions of negotiators of that trade agreement, Volume 3, page 7–140, it appears that the intention of the negotiators is to the effect that the concession, namely, the reduction in duties on cherries in their natural state not in water-tight or air-tight containers, this concession—I will quote: "The concession does not apply to Dalmatian tree dried sour cherries which are classified as cherries in their natural state and which are imported in air-tight or water-tight containers."

We are of opinion that the reasons given by counsel for dismissing the protest are inadequate to support the motion. Ordinarily a protest is dismissed when it is defective or when the court has no jurisdiction of the subject matter and we can see no reason for dismissing this protest on the grounds stated. The motion to dismiss is denied, with exception granted to counsel for the defendant.

The sole question presented in this case is one of fact, namely, were the kegs in which the cherries were imported airtight or watertight containers? The merchandise was imported from Yugoslavia, the products of which country are entitled to the same rates of duty as products of Canada under the trade agreement, as indicated from an examination of a copy of the President's letter published in T. D. 49752, and cherries in their natural state are therefore dutiable at 1 cent per pound if they are not packed in airtight or watertight containers.

The keg introduced in evidence as exhibit 1 is flimsy in construction and the evidence clearly shows that it is not watertight, because not only water but also cherry juice leaks through it. If it is not watertight it certainly is not airtight. The evidence shows also that the large majority of kegs of this character containing such cherries arrive in a leaking condition. The character of the kegs in this case does not appear to be an exception to the usual condition because it appears from an examination of the decision in *Levy & Levis* v. *United States,* 5 Ct. Cust. Appls. 89, T. D. 34130, in which the method of packing such cherries is described, that ordinarily the natural juice of the cherries exudes from them in such quantities as to discolor the barrels in which they are packed. By agreement the evidence in *Levy & Levis* v. *United States, supra,* was incorporated in the record in *Milan Cernosia* v. *United States,* 68 Treas. Dec. 122, T. D. 47819.

Counsel for the defendant argues that an examination of the report of the Tariff Commission on the trade agreement with Canada fully supports his contention that cherries in kegs of the kind herein involved do not fall within the provision for cherries in the trade agreement. On the other hand, counsel for the plaintiff argues that the provision in the trade agreement for "cherries in their natural state,

not in air-tight or water-tight containers" is clear and unambiguous and that there is no occasion to resort to other data to determine intent, citing *United States,* v. *H. J. Heinz Co.,* 26 C. C. P. A. 9, T. D. 49557; *Cohn & Lewis* v. *United States,* 25 C. C. P. A. 220, T. D. 49335.

While the contention of the plaintiff is well founded and a consideration of extraneous matter is unnecessary, we have examined the statements of the Tariff Commission referred to by the defendant and find that there is no foundation for the contention that there was no intent to include cherries within the provision when packed in the manner of those in this case. The statement is found on page 7–140 of a pamphlet dated 1938 having the title "Second Trade Agreement Between the United States and Canada—Digests of Trade Data with Respect to Products on which Concessions were Granted By the United States," reading as follows:

The concession does not apply to Dalmation tree dried sour cherries which are classified as "cherries in their natural state" and which are imported in air-tight or water-tight containers.

. The record in this case shows that Dalmatian cherries in their natural state are imported in hermetically-sealed tins. The above statement clearly refers to them but it does not refer to Dalmatian cherries in their natural state which are not imported in airtight or watertight containers. If it had been the intent to exclude all Dalmatian dried sour cherries, the words "and which are imported in airtight or water-tight containers" would not have been used.

We find that the containers of the cherries in this case were not airtight or watertight and we hold that the cherries contained therein are dutiable at 1 cent per pound under paragraph 737 of the Tariff Act of 1930 as amended by the trade agreement with Canada, published in T. D. 49752. The protest is sustained. Judgment will be entered in favor of the plaintiff.